Good morning. May it please the court. Erica Vorkian on behalf of the appellant, Eric Romero-Lobato. I'd like to reserve two minutes for rebuttal this morning, and I will try and keep track of my time. There are multiple paths for reversal in this case, but unless the court directs me otherwise, today I'd like to primarily focus on the notice issue, and if time remains, I'll go ahead and turn to the misadvisement of relief. Can I ask you, which notice are you referring to, the notice of hearing? Correct, Your Honor. Yes. Okay, great. Yeah, please focus on that. The reason I'd like to focus on it, too, is because that does satisfy both looking specifically to 1326d3, it satisfies both the fundamental unfairness prong as well as the part of prejudice requiring Mr. Romero-Lobato to show that he could, in fact, move to reopen the in absentia proceedings and seek to rescind that deportation order. As to notice, I think there are a couple of important points here that I don't think the government is disputing. The first is that because Mr. Romero-Lobato was just a child at the time of his proceedings, this court's precedent and its interpretation of the governing immigration regulations required authorities to notice not only Mr. Romero-Lobato himself, but also his mother as the responsible adult in charge of him. And just to clarify one thing, was his mother his guardian in the sense contemplated by the regulations? Because I thought he had been released into the custody of the state at one point, but you're saying the notice had to go to his mother. Is that right? That's correct, Your Honor. So there is at some point we do know that he's in juvenile custody, but at the point where he's placed into juvenile custody, INS then issues a detainer on him, and so they sought to in addition to seeking a warrant for his arrest, and so they sought to take him back. And then we know that pursuant to the regulations, he would have been released back to his mother. That's not what the record shows, right? The record doesn't show that he was released to his mother. I think the record shows, given that this detainer was placed on him while he's in juvenile custody, the record supports an inference that INS would have taken custody of him again. Right, so why do you have to give that notice if he's not going to be released to his mother, right? You only have to give the release to the mother if you're going to release the minor to the mother. Because he was ultimately released to his mother. So what we do know is after that detainer is placed, he ultimately ends up back in his mother's care. From where? From where was he in custody before he went to his mother's care? It's our position that he would have been released from INS custody because there was that detainer. It's our position he would have been taken back into legal custody of INS at that point and then released on bond to his mother after there was a bond determination made. I'd also note for the court, the government hasn't contested this factual finding. Now there was a little bit of clarification in this court's case law that came post the district court's order in this case. So of course, Cruz Pleitez, Jimenez and B.R. I understood that he was released from INS custody to juvenile hall. So can you just point me to a place in the record that I can check later that he was actually released to his mother? Yes, Your Honor. Give me one moment. And to be clear, what we're relying on here is the notice in the record that shows that there was a detainer. You know, you can give it to me on rebuttal. Let's save time if you don't mind. I actually don't think the notice to the mother is your strongest argument, personally. So I was hoping you might talk about the notice of hearing. There's no evidence in the record as to whether that was served and how it was served. You didn't raise that issue below. So let's talk about forfeiture. Let's talk about where do we go from here? Because we could say on this record there's no evidence of service whatsoever, either personal or certified mail. But on the other hand, you didn't raise it below, and so the government didn't get an opportunity to present any evidence of service if there is evidence of service, and we have the presumption of regularity. I think there are a few reasons that this issue is properly before the Court today. The first is below. Mr. Romero-Lobato's argument below is that he was never provided the requisite notice, and so I think this Court could comfortably look to the notice of hearing as part of that argument. But even if the Court didn't want to look at it that way, Mr. Romero-Lobato has raised this on appeal, and the government has engaged with this argument, and the government certainly hasn't made any argument that Mr. Romero-Lobato waived the notice of hearing claim. And, of course, it's well settled in this circuit that the government can waive its waiver argument on appeal. So to the extent that the Court has concerns about that, I would submit that the government has engaged on the merits, and so the Court should too. Well, it's not just a matter of the waiver and forfeiture in the discretionary sense. Rule 52 says that we can't reverse for a forfeited error unless there was a plain error, and how can the error have been plain when there are no facts one way or the other about it? So the District Court in this case did make a factual finding about the notice of hearing, and so that was a clearly erroneous factual finding, because as Your Honor noted, there's simply nothing in the record to support it. So because the District Court did make that factual finding, and we're under a... I feel like there are a number of different documents maybe that we're talking about. So which specific factual finding are you referring to? So in the District Court's order, the District Court addressed both the orders to show cause, as well as it made a finding that the notice of hearing was also served. And so although the bulk of the District Court's order is focused on discussing the orders to show cause, the Court also did address that this notice of hearing was sent. Now on this record... I'm sorry, can you point us to where? Because I don't know if it's sort of an umbrella statement that you're saying includes... Because clearly the focus was on the order to show cause, and some on the order of removal, but where was it as to the notice of hearing? Yes, Your Honor. It was in the factual section, or factual background, and procedural history. You know what? You could save the time for rebuttal. I'm sorry to do this, but I know we're running out of time. So you can give us a cite later, but... Certainly, Your Honor. So... So let's say, I mean, maybe the best case for you on this is somewhere that there is some express statement on that. The question remains, why would that statement be plainly erroneous if there aren't any facts that suggest that it's wrong? So I think for this particular factual finding, we're under a clear error standard, right? So the District Court clearly erred because there's no... Well, it's clear error, but also plain error if the argument was forfeited, right? Well, I suppose in that case... I mean, the government hasn't raised plain error arguments, but I would first kind of note that for the Court. That's why that's not fleshed out in our briefing. But even going through the steps of plain error, I think that this factual error would lead to plain error because there's nothing in the record to demonstrate, first of all, or to indicate or suggest that this notice of hearing was sent. Presumption of regularity, which I can expand on in a moment, is not triggered on this record, or if it is, it's rebutted. And to predicate an administrative removal or deportation on a notice that violates due... Excuse me, on proceedings that violated due process absolutely affected individual's substantial rights, especially when we're now in the criminal realm, right? The government seeks to predicate criminal liability on proceedings that it's our position didn't comport with due process at the outset. And what is... You said the presumption of regularity has been rebutted. What is there, with respect to the notice of the hearing, what is there that rebuts the presumption of regularity? Certainly, Your Honor. I mean, I would first note, as a threshold matter, it's not even triggered here because there's nothing in the record that this Court typically looks to, such as a receipt for certified mail service, envelopes, something attesting to personal service. Even if it were triggered here, Your Honor, going through the factors that this Court enumerated in Sembering shows that that's rebutted. So, for example, Mr. Romero-Lobato's mother had already filed a petition for him to adjust status. She was an LPR. She sought to have her son obtain the same status prior to the initiation of deportation proceedings. And so what that tells us is that Mr. Romero-Lobato didn't have a motivation to avoid these hearings had he been properly noticed of them. And this is confirmed by Ms. Romero's declaration, right? Because she talks about how, had she been aware, these are the steps she would have taken to seek relief for her son, including making sure he attended his hearings, including attempting to obtain an attorney for him. And we also know that Mr. Romero-Lobato had substantive relief that was available to him, most obviously the adjustment of status, but also three additional avenues he could have pursued that were not just available to him, but fairly plausible that he would have, in fact, received that relief. Could you prevail on appeal? Because there's nothing in this record that shows that that notice of hearing was served in any way, either through personal service or certified mail. That's correct, Your Honor. That is why we prevail on this, because that notice of hearing was never served. You know, in order to invoke a presumption, a presumption presumes that an agency or a service is acting within its general prescription, right? And we know that the immigration regulations at the time required either personal service or certified mail. Absent any indicia of service pursuant to those requirements, this Court may not presume that it was served, and that's why this was clear error on this record. Thank you. We used up your rebuttal time, but we'll give you two minutes. Thank you. Mr. Reed. Good morning. May it please the Court, Bill Reed for the United States. To obtain relief from this Court, Mr. Romero-Lobato must show that the District Court's factual findings were clearly erroneous. Clear error only exists when this Court is left with a definite and firm conviction that a mistake was made by the District Court. Here, the District Court conducted a comprehensive and thorough and comprehensive review of the records and documents that were available from 27, 28 years ago, issued a 15-page written order, and reasonably concluded that both Mr. Romero-Lobato and his mother were notified of the removal proceedings back in 19... Could you address the specific question of the notice of the hearing, and more particularly, do you think... What is the standard of review for us on that issue? Was that argument preserved, do you think? Your Honor, I think Judge Koh was correct that that issue was not really teased out or fleshed out before the District Court. The emphasis and the focus was with the order to show cause that was served on Mr. Romero-Lobato in the Juvenile Hall, and then by the government's contention again at his residence by certified mail. So... But in your brief, I don't think you argued for the application of the plain error standard to that. Did you? No, Your Honor, I think the presumption of regularity is what the government would rest its argument on in this case, and I believe the notice that we're talking about, just to make sure we're all talking about the same document, I think we are. It's ER-216. It's a letter which gives the date, time, and place for the July 31, 1996 removal hearing in Reno, Nevada. It gives the address. It's addressed to Mr. Romero-Lobato at the address that was given by him to the immigration agent in Juvenile Hall. If you're talking about Juvenile Hall, I think that's the order to show cause. Is there anything in the record about the notice of hearing about how that was served, either in person or by certified mail? I didn't see anything, but if you can point me to something, I'd be very interested. Your Honor, I'm not aware of anything in the A file. Again, it was not through... There's nothing in the A file as to how that was served? To your Honor, because that was not the focus of the motion to dismiss the indictment before the district court. It may or may not, I'm not aware of any evidence, but be that as it may, this is a letterhead. It has the address. It has the date. In the body of the letter, it says, the order of deportation will be entered if INS establishes by clear, unequivocal, and convincing evidence that Mr. Romero-Lobato or his attorney had been notified. So you're relying on the fact that the... I mean, it has his name and the Spokane Street address, and you're relying on the presumption that it was, in fact, mailed, or a copy was, in fact, mailed to that address. Is that your argument? Yes, Your Honor, it is. I agree with the address and the date, and also I think the court... But can I ask you a question? When you're litigating these motions to dismiss below in the district court, you include what's in the A file as to service of all the relevant documents, right? The order to show cause, the order of removal, the notice of hearing, the order to report. Like, why would you not include a complete record for the district court to consider on this issue of service since that's the big challenge that your opposing counsel is making? I don't want to represent to the court that there's something in the document that there's not, but I don't think that with the district court not having had that opportunity with the specific argument about this specific document, which there really wasn't an argument. I think Your Honor picked up on that, and I'm glad that Your Honor did. There are two certified mailings. One for the order to show cause. There was an additional one with the order of removal in September of 1996. I think that there's enough, if it had been before the court, even without a certified return receipt piece of paper in the file, I think there was enough for the court, if it had been before the court, to have made a reasonable inference that the presumption of regularity applied here. Right. And just, I don't want to belabor this point, but the fact that it wasn't before the district court seems like it would be a reason to apply the plain error standard, but you're not asking us to do that, are you? I'm not sure if I follow Your Honor on that, but I would suggest that the attempt is being made here to sort of turn the burden on its head here. The burden's on the defendant in these collateral attack proceedings, and the defendant has to show that there was some deficiency in the proceeding here. There's a chain of events from the A file, a chronology. It's not a perfect chain, but there is certainly enough for the district court to have made the reasonable inference that the notice here was given. Can I ask you something? If there is a certified mail receipt, the documentation that you include for the OSC and the order to report for removal, those would be in the possession of the government. So you're saying the burden is on Mr. Romero-Lobato to prove the negative that those documents are not in the government's possession. Isn't that a little bit of a challenge for the appellant? I wouldn't go that far, but I would say it's his burden to at least raise the issue and focus the district court on that issue below, and that didn't occur. But nevertheless, I think that the verbiage in the letter, the court has to take into consideration that that has some meaning that the immigration judge would not issue an in absentia removal order unless there was clear, unequivocal, and convincing evidence that notice had been provided as to both the proceedings, the date and time and place of the location of the proceedings. Is there a regulation? I suppose I should know the answer to this, but that specifies the requirements of how documents like this are to be mailed? Your Honor, I can't answer that. I don't know. I guess if you're invoking the presumption of regularity, I mean, it seems like that presupposes some idea of what the regular practice of the agency would be, doesn't it? So what can you tell us about what the regular practices of the INS would have been with respect to documents like this? Your Honor, I just know that in 1995 and 1996, the INS, I think it's ICE now or DHS now, they did issue certified return receipt mailings for at least the order to show cause and the removal order after it was issued. I don't know if interim documents were required, such as the date, time, and place. I don't know the answer to that. Could I just add something? Yes, Your Honor. 8 U.S. Code, Section 1252B, for the notice of hearing, which they call the notice of time and place of proceedings, says that written notice shall be given in person to the alien or if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel's record, if any. So I think there was a requirement at that time that it be done either in person or through certified mail. Let me ask you another question. If I look at the notice of hearing, what it says, the language is verbatim with the language in Arias Ordonez, which we found was affirmatively misleading, with the exception of removal is now the language instead of deportation. You know, it says, a review of your file indicates there is no administrative relief which may be extended to you and is now incumbent upon this service to enforce your departure from the United States. You agree that that was actually not the correct information as to Mr. Romero-Lobato, correct? I concede that, Your Honor. Okay. And that language, other than removal replacing the words deportation in the sentence, as you know, following a hearing in your case, you were found deportable and the hearing officer has entered an order of deportation, that that whole language, a review of your file indicates there's no administrative relief, that's all the same as the order to report in Arias Ordonez. It's just that the language removal has been changed to, you know, was deportation at the time of Mr. Romero-Lobato, but, you know, by the time of Arias Ordonez was changed to removal. But you agree that's the same language, right? I believe it. Yes, Your Honor, I agree that it seems to track the language, but the district court, I see my time. You may answer the question. Not to try to get the last word in, I think the district court made a point that there was a distinction in Mr. Romero-Lobato's situation from Arias Ordonez, whereas the language Mr. Romero-Lobato had different information than Mr. and Arias Ordonez. Unless there are any other questions, I respectfully submit it to the court. Thank you. Thank you. Ms. Kevorkian, you have two minutes. Thank you. I'll go ahead and start with those record sites, Your Honors. I would first direct the court to the district court's finding that the notice of hearing was mailed to 1ER11. This is part of the district court's order where the court stated approximately a month later, on March 27th, INS mailed defendant notice that his master calendar hearing would be held on July 31st, 1996. That is in reference to the notice of hearing, and that is a clear factual error. As to the record citation for the INS detainer that was placed on Mr. Romero-Lobato, I do believe this actually occurs a couple of times in the record, but I would direct the court to ER198, where it clearly states both that there was an INS detainer placed on Mr. Romero-Lobato, as well as that immigration authorities were seeking the issuance of an OSC and a WA or warrant for arrest. Can I ask you, what did the district court cite as ECF number 40-14 at 2? Is that the notice of hearing? Your Honor, I would have to... It's okay. I don't want to eat your time. I would have to check on that, but what I will tell the court is that that is the only document pre-hearing that contained that date on it. So I think the district court, in order to make that finding, the district court would have had to have been relying on the notice of hearing because the only other documents we have coming before that, of course, are the orders to show cause, which didn't have a date on them, and then subsequent to that was the ultimate in absentia order that was issued for Mr. Romero-Lobato. So your position is the presumption cannot apply to that document? Absent any other proof, that is insufficient for the court to have found that that document was mailed? That's correct, Your Honor. And your client could have filed an affidavit or a declaration saying he never got notice, but he didn't do that? Well, we do have his mother who filed a declaration. Yes, I understand that. Did he do that? We do not have a declaration from Mr. Romero-Lobato, but what I will say is that this court's inquiry is properly focused on the immigration authority's steps to effectuate service ex ante. And so in every case that I have found, every case this court has considered this type of presumption. So specifically, I would direct this court to Coley v. Gonzalez, where this court said that the presumption is not in play unless there's been some prima facie showing that it applies to whatever the challenge in the particular case is. So in Coley, it was jurisdiction. Here, it's effective service of notice. And the existence of the document itself, especially when the regulations at the time required either personal service or certified mail service in the regular course of business, simply doesn't apply. And to touch on that, Your Honor, to answer the court's question about the regulation for mailing, although I do believe Judge Koh was reading from this, it's 1252 B.A. 2A, required certified mailing or personal service at the time. So, I mean, suppose the government put in a declaration from somebody who said, you know, I'm a clerk at the INS, and I can tell you that it is our practice when there's a document like this, we put it in the mail to the address that appears in the document. Would that be enough, then, to trigger the application of the presumption of regularity? It would certainly be a different case. I don't think that that would be enough, though, only because we already know what their regular practice was. Their regular practice was to follow the statute 1252 B and the practices prescribed therein. So I think this court will always look to, you know, again, at least from the cases I can think of, this court will always look to specific record evidence that those general practices that they try to follow were followed in the specific case. So if you acknowledge that that is their general practice to mail it, and here we have this document with the right address on it, and on the other side we have his mother saying, you know, I didn't get it, why could the district court not give more weight to the former than the latter? I mean, like, we're not the fact finder. It's the district court's job to evaluate that. Why isn't that an outcome that he could make and it wouldn't be clearly erroneous? Because a statutory obligation or a legal obligation is not evidence that that obligation was followed. As this court has separately said, a presumption is an essentially factual inquiry, right, which is why, of course, we also maintain that this is an inquiry, this is a defense that the government should have raised below as well. It's a factual question that the district court... The district court did not pass on a presumption of regularity here. It wasn't raised. But on the record that we do have, it's our position that it's not triggered for the reasons discussed. Couldn't a general practice be that once you comply with the statute, you put proof of that compliance in the A file? I think it very well could be an issue. Right, you know this is going to be an issue. Why would you not create the business record for showing and proving compliance with the statute? I think that's correct, Your Honor, and I think that's actually supported by this record in that we have certified mail receipts for the orders to show cause. So we know that immigration authorities were aware of their responsibilities and knew how to document it. And the order to report also has a proof of certified mail. Exactly, Your Honor, and the order to report. Yet this critical document lacks anything of the sort. Are you asking us to remand or are you asking us to reverse? I think this court could do either. So given the, you know, there really has been a lot of case law that has come out on a few points that touch on this case, Palomar, the Flores-Chavez cases that come after, even Kaiser v. Wilkie, although that's not really at issue anymore, the hour deference that the district court intended to apply. I think that general change in the case law would warrant this court sending back for a remand to reconsider in light of that changed case law. That being said, I also think, given the government's litigation decisions on appeal, this court could comfortably reverse the order altogether. So unless the court has any additional questions, I see I am... Did you have a citation to the record for your client being released to his mother's custody? No, for that we're relying on the fact that after he went to state custody, INS placed a detainer on him to bring him back. And so that's the ER-198 site. I don't otherwise have a site for the court beyond that. That's what we're relying on for that. Again, though, to the extent that, I mean, the court has remaining concerns about that, I'd note that, again, Cruz Pleitez, Jimenez-Sandoval, and BR all came out after the district court's decision in this case, and so the parties didn't have an opportunity to litigate with this court's holdings in those cases in mind. Thank you very much. Thank you for your time. Thank both counsel for the arguments and the cases submitted.
judges: MILLER, KOH, Lynn